UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CATRESSE FREEMAN, <br><br> *Plaintiff*, <br><br> v. <br><br> NATIONAL RAILROAD PASSENGER CORP., *doing business as* AMTRAK, <br><br> *Defendant*. | Civil Action No. 23-03630 (AHA) |

**Memorandum Opinion and Order**

Catresse Freeman alleges that the National Railroad Passenger Corporation, commonly known as Amtrak, violated the Americans with Disabilities Act ("ADA") by terminating her employment. Amtrak moves for summary judgment, claiming that it terminated Freeman because she violated company policy by engaging in outside employment while on medical leave. But Freeman has offered evidence from which a reasonable jury could conclude that Amtrak's asserted justification was pretext for discrimination. And contrary to Amtrak's argument, Freeman's ADA claim does not fall within the narrow category of disputes precluded under the Railway Labor Act ("RLA"). Accordingly, the Court denies Amtrak's motion for summary judgment.

**I.     Background**

Freeman began working for Amtrak as a crew management representative in October 2015. ECF No. 25-1 ¶ 1. She separately operated a makeup company, providing services outside her Amtrak hours. *Id.* ¶ 8; ECF No. 25-3 at 54. After Freeman was diagnosed with depression in August 2022, Amtrak approved her for medical leave through November 2022 and later extended that leave another three months. ECF No. 25-1 ¶¶ 16–17, 32. Meanwhile, in October 2022,

Amtrak's Office of Inspector General ("OIG") received an accusation that Freeman "may have engaged in outside employment while out on short-term disability." ECF No. 24-3 at 71. OIG received a similar accusation about Freeman working while on leave in December 2022. *Id.*

Two Amtrak supervisors closely tracked whether and how OIG was investigating Freeman. The December 2022 accusation came from Michael Kates, director of crew management services. ECF No. 25-1 ¶ 41; ECF No. 27-3 at 2; ECF No. 27-4 at 2. Howard Conway, another senior Amtrak official, then asked for an update on the OIG investigation. ECF No. 25-17 at 3. Conway provided a link to Freeman's makeup company as "the reason I believe she is being fraudulent" and said Freeman "is very good at doing makeup and probably just needs benefits from Amtrak." *Id.* OIG responded that the investigation was ongoing, at which point Kates emailed Conway: "Ongoing – that sounds good!" *Id.* at 2.

Based on the accusations, OIG interviewed Freeman. ECF No. 24-3 at 71, 73–74. Freeman acknowledged doing makeup for some people while on leave and said she did it as a hobby and form of therapy. *Id.* at 76; ECF No. 27-1 at 3–4. Freeman said her gross receipts for the period she was on leave were in the range of $200 to $300. ECF No. 24-3 at 74.

Freeman returned from medical leave in February 2023. ECF No. 25-1 ¶ 36. Three months later, OIG issued a report finding Freeman had engaged in outside employment while on medical leave in violation of Amtrak's policies, including its code of ethics, short-term disability income policy, and medical leave and absences policy. ECF No. 24-3 at 77. One day after receiving the report, Conway said that another employee had been terminated for working while on medical leave and that "[we] will be consistent with this employee as well." ECF No. 25-23 at 2.

A few days later, Amtrak issued Freeman a notice of formal investigation for termination. ECF No. 25-1 ¶ 40. The notice said: "it is alleged that your actions did not represent Amtrak's

Core Values and [were] in violation of Amtrak's Code of Ethics and Standards for Behavior." ECF No. 24-4 at 31. Amtrak held an investigatory hearing on May 25, 2023. ECF No. 25-1 ¶ 44. An OIG investigator said Freeman had admitted to providing makeup services while on leave and making a few hundred dollars. *Id.* ¶ 47. Freeman stated that she did makeup for people while on leave as a hobby and that the money she received was to cover supplies and services. ECF No. 25-6 at 31, 51.

The hearing officer determined that Freeman had violated the code of ethics, the short-term disability income policy, and the medical leave and absences policy. ECF No. 24-9 at 8–9. After receiving the decision, Kates remarked that the charging officer "Stays Undefeated!" ECF No. 25-24 at 2. Conway then issued a notice of termination to Freeman "[b]ased on the decision of the Hearing Officer, and upon review of the findings of the Hearing." ECF No. 24-4 at 34. Freeman's union appealed the termination, but the appeal was denied. ECF No. 25-1 ¶¶ 53–54.

Freeman filed this suit alleging disability discrimination in violation of the ADA. ECF No. 1 ¶¶ 26–33. Amtrak answered the complaint, and the parties proceeded to discovery. Amtrak now moves for summary judgment. ECF No. 24.

**II.    Discussion**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if a dispute over it might affect the outcome of a suit under governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination." *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute "is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson*, 477 U.S. at 248). The reviewing court "must view the evidence in the light most favorable to the

nonmoving party . . . , draw all reasonable inferences in her favor, and eschew making credibility determinations or weighing the evidence." *Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007).

Amtrak argues that Freeman's ADA claim is precluded by the RLA in light of the collective bargaining agreement ("CBA") between her union and Amtrak, and that no reasonable jury could find in her favor. The Court concludes Freeman's claim is not precluded and a jury must resolve whether Amtrak discriminated against her based on disability.

**A. The RLA Does Not Preclude Freeman's ADA Claim**

Congress enacted the RLA "to promote stability in labor-management relations by providing a comprehensive framework for resolving labor disputes." *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252 (1994). The Act establishes a mandatory arbitral process for two types of disputes: "major" disputes, which relate to "the formation of collective [bargaining] agreements or efforts to secure them," and "minor" disputes, which "gro[w] out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions." *Id.* at 252–53 (alterations in original) (citations omitted). That is, whereas "major disputes seek to create contractual rights, minor disputes [seek] to enforce them" through "the interpretation or application of existing labor agreements." *Id.* at 253, 256 (citation omitted); *see also Consol. Rail Corp. v. Ry. Lab. Execs.' Ass'n*, 491 U.S. 299, 305 (1989) ("The distinguishing feature of [a minor dispute] is that the dispute may be conclusively resolved by interpreting the existing agreement."). Amtrak says Freeman's ADA claim is a minor dispute that must go through the RLA's grievance resolution process. The Court disagrees.

As the Supreme Court has recognized, "the RLA's mechanism for resolving minor disputes does not pre-empt causes of action to enforce rights that are independent of the CBA." *Hawaiian*

4

*Airlines*, 512 U.S. at 256.[1] The "general rule" is that "the RLA does not require arbitration of claims asserting rights established by state or federal law independent of a collective bargaining agreement." *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 833 (7th Cir. 2014). Here, Freeman's asserted rights stem from the ADA, not from a right she is entitled to under the CBA. Such claims are generally not precluded by the RLA. *See, e.g.*, *Stouffer v. Union R.R. Co.*, 85 F.4th 139, 145 (3d Cir. 2023) (no RLA preclusion where plaintiff's claims "stem from a federal statute, not the CBA itself"); *Giles v. Nat'l R.R. Passenger Corp.*, 59 F.4th 696, 703 (4th Cir. 2023) (no RLA preclusion where plaintiff "asserts a right under an independent federal statute, not the CBA, and we need not interpret the CBA to resolve this case").

Other courts in this District have reached the same conclusion in cases against Amtrak involving the assertion of rights under federal antidiscrimination statutes. *See Klotzbach-Piper v. Nat'l R.R. Passenger Corp.*, No. 18-cv-1702, 2021 WL 4033071, at *6 (D.D.C. Sept. 3, 2021) (finding that plaintiff's claims were not precluded by RLA where suit was based on "federal antidiscrimination laws that confer on her rights 'independent of' any collective bargaining agreement" (citation omitted)); *Hamilton v. Nat'l R.R. Passenger Corp.*, No. 19-cv-01986, 2020 WL 6781234, at *4 (D.D.C. Nov. 18, 2020) ("The [Family and Medical Leave Act] claims that [the plaintiff] asserts here arise independent of the CBA."); *Said v. Nat'l R.R. Passenger Corp.*,

---

[1] In *Hawaiian Airlines*, the Supreme Court considered RLA preemption of a state law cause of action; however, courts have recognized that its analysis applies equally to preclusion of a federal law cause of action because "questions of preemption and preclusion involve the same inquiry: whether the claim is based on a minor dispute." *Sturge v. Nw. Airlines, Inc.*, 658 F.3d 832, 836 n.4 (8th Cir. 2011); *see also, e.g.*, *Odell v. Kalitta Air, LLC*, 107 F.4th 523, 529 n.6 (6th Cir. 2024) ("In *Hawaiian Airlines*, the Supreme Court applied a case dealing with preclusion to a preemption issue, stating that the distinction did not 'rob' the preclusion case 'of its force in this context,' reasoning that the '[p]rinciples of federalism demand no less caution in finding that a federal statute pre-empts state law.'" (alteration in original) (quoting *Hawaiian Airlines*, 512 U.S. at 259 n.6)).

390 F. Supp. 3d 46, 55 (D.D.C. 2019) (holding that plaintiff's claims sought to enforce "the right not to be discriminated against by an employer as prescribed by federal and state laws" and therefore were "not preempted or precluded by virtue of the nature of the right asserted"). Amtrak makes little effort to distinguish these cases.

Amtrak contends that Freeman's ADA claim is precluded because it is "inextricably intertwined" with the CBA. ECF No. 24-1 at 7–8. The testimony at the investigative hearing, according to Amtrak, related to whether Freeman had violated Rule 11 of the CBA's prohibition on employees engaging in other employment while on leave. *Id.* The union appealed the termination after the hearing on grounds related in part to the CBA. *Id.* at 8; *see* ECF No. 24-3 at 243–49. Amtrak says the Court therefore would be required to interpret the CBA to determine whether Freeman violated Rule 11. ECF No. 24-1 at 8.

This argument is unpersuasive because the record does not indicate that the decision to terminate Freeman had anything to do with Rule 11 of the CBA. Rule 11 provides that an employee on leave who engages in other employment generally forfeits her seniority and is considered out of service. ECF No. 24-3 at 100. But that was not the basis for the termination here. The notice of investigation said Freeman's conduct was alleged to violate Amtrak's code of ethics. ECF No. 24-4 at 31. The hearing officer's decision found that Freeman had violated the code of ethics, the short-term disability income policy, and the medical leave and absences policy. ECF No. 24-9 at 8–9. And the notice of termination said Freeman was being terminated "[b]ased on the decision of the Hearing Officer, and upon review of the findings of the Hearing." ECF No. 24-4 at 34. None of these documents mentioned Rule 11, and there is no indication that the meaning of the CBA is contested. So Freeman's claim does not require the Court to resolve any disputed interpretation of the CBA. *See Hamilton*, 2020 WL 6781234, at *4 (explaining that plaintiff's claims "do not hinge

on competing interpretations of a CBA provision"). Freeman's argument is that she was unlawfully terminated in violation of her rights under the ADA; she does not rely on rights conferred by the CBA. *See Carlson*, 758 F.3d at 833 (explaining that "RLA preclusion, properly applied, does nothing more than keep disputes actually arising under a collective bargaining agreement out of court").

Moreover, the Supreme Court has rejected the notion that the RLA precludes a claim whenever a defendant simply argues its actions were "arguably justified" by the terms of a CBA. *Hawaiian Airlines*, 512 U.S. at 265–66. Amtrak cannot trigger preclusion "merely by asserting certain CBA-based defenses to what is essentially a non-CBA-based claim . . . or by arguing that the action challenged by the plaintiff is 'arguably justified' by the terms of a CBA." *Hoffstead v. Ne. Ill. Reg'l Commuter R.R. Corp.*, 132 F.4th 503, 514 (7th Cir. 2025) (quoting *Brown v. Ill. Cent. R.R. Co.*, 254 F.3d 654, 668 (7th Cir. 2001)). Courts have accordingly concluded it "is not enough to point to sections of the CBA that may be relevant." *Stouffer*, 85 F.4th at 146; *accord, e.g.*, *Carlson*, 758 F.3d at 833 ("Claims are not precluded just 'because certain provisions of the CBA must be examined and weighed as a relevant but non-dispositive factor in deciding a claim or a defense.'" (quoting *Brown*, 254 F.3d at 668)). That is precisely what Amtrak tries to do here. Its suggestion that Freeman's termination might have been justified under Rule 11 "boils down to asserting that its actions were permitted by the CBA," and that does not make Freeman's claim precluded under the RLA. *Stouffer*, 85 F.4th at 146.[2]

---

[2]  Amtrak also suggests that imposing some lesser sanction could have been unlawful "direct dealing" with a union member. ECF No. 24-1 at 8–9. But this is just another way of arguing that Amtrak's decision to terminate Freeman was "arguably justified" by the CBA, and that is insufficient to trigger RLA preclusion of a claim based on federal antidiscrimination law. *See, e.g.*, *Stouffer*, 85 F.4th at 146 ("[A] claim is not barred simply because 'the action challenged by the plaintiff is "arguably justified" by the terms of the CBA.'" (citation omitted)); *Carlson*, 758 F.3d

**B. A Jury Must Resolve The Genuine Disputes Of Material Fact As To Whether Amtrak Discriminated Against Freeman Because Of Her Disability**

Amtrak also asserts that it is entitled to judgment on the merits of Freeman's disability discrimination claim. Again, the Court disagrees.

"[T]he two basic elements of a disability discrimination claim are that (i) the plaintiff suffered an adverse employment action (ii) because of the plaintiff's disability." *Waggel v. George Washington Univ.*, 957 F.3d 1364, 1373 (D.C. Cir. 2020) (alteration in original) (quoting *Adeyemi v. District of Columbia*, 525 F.3d 1222, 1226 (D.C. Cir. 2008)). "When an employer asserts legitimate, nondiscriminatory reasons for an adverse employment action," the court asks "whether the plaintiff produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the plaintiff on a prohibited basis." *Id.* (quoting *Adeyemi*, 525 F.3d at 1226). To prevail, the plaintiff "must point to evidence tending to show the [defendant's] justifications for one or more adverse employment actions are pretextual." *Id.*[3]

The D.C. Circuit has made clear that a court should not "rush" to the pretext analysis without first considering whether the employer has satisfied its burden to articulate a legitimate,

---

at 832 (explaining that courts must "tak[e] care not to interpret the RLA as excluding a class of employees from statutory protections against employment discrimination and retaliation").

[3]  Freeman suggests in her summary judgment opposition that she has raised a disparate impact claim. ECF No. 25 at 11–13. But the complaint is devoid of allegations that would have put Amtrak on notice of a disparate impact claim, and in any event, Freeman has not made the showing required for such a claim to proceed. *See Greater New Orleans Fair Hous. Action Ctr. v. U.S. Dep't of Hous. & Urb. Dev.*, 639 F.3d 1078, 1085–86 (D.C. Cir. 2011) ("When presenting a disparate impact claim, a plaintiff must generally 'demonstrate with statistical evidence that the practice or policy has an adverse effect on the protected group.'" (citation omitted)); *Patton v. Shulkin*, No. 16-cv-00250, 2018 WL 1321589, at *14 (W.D. Va. Mar. 14, 2018) (granting summary judgment to defendant on disparate impact claim where plaintiff "has not offered any evidence, statistical or otherwise, demonstrating that the alleged practice of terminating employees based on their use of accrued leave had a disparate impact on disabled employees as a group"). The Court therefore analyzes Freeman's ADA claim as a disparate treatment claim.

nondiscriminatory reason for its action. *Figueroa v. Pompeo*, 923 F.3d 1078, 1087 (D.C. Cir. 2019). For the employer to do so, (1) the employer "must produce evidence that a factfinder may consider at trial"; (2) the factfinder "must reasonably be able to find that the employer's action was motivated by a nondiscriminatory reason"; (3) "the nondiscriminatory explanation must be legitimate," meaning that it is "facially credible"; and (4) "the evidence must present a clear and reasonably specific explanation." *Id.* at 1087–88 (internal quotation marks and citations omitted). Contrary to Freeman's argument, here Amtrak has articulated a facially credible reason for terminating Freeman. ECF No. 24-1 at 10–12. Amtrak says it fired Freeman because she violated company policies about outside work while on leave, and it supports that with evidence that OIG received accusations and conducted an investigation, followed by a hearing and findings to that effect. That explanation is clear and reasonably specific.[4]

Whether a jury could find otherwise, and conclude this reason is pretext for discrimination, is a different question. The Court considers this question "'in light of the total circumstances of the case,' asking 'whether the jury could infer discrimination from the combination of (1) the plaintiff's *prima facie* case; (2) any evidence the plaintiff presents to attack the employer's proffered explanation for its actions; and (3) any further evidence of discrimination that may be available to the plaintiff . . . or any contrary evidence that may be available to the employer.'" *Hamilton v. Geithner*, 666 F.3d 1344, 1351 (D.C. Cir. 2012) (omission in original) (quoting *Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1289, 1291 (D.C. Cir. 1998) (en banc)). "To avoid summary judgment, employees need not necessarily provide evidence beyond that rebutting the employer's stated explanation." *Morris v. McCarthy*, 825 F.3d 658, 668 (D.C. Cir. 2016).

---

[4] Freeman also suggests that the policies themselves are discriminatory, relying on her purported disparate impact claim. ECF No. 25 at 14–15. That argument fails for the reasons already discussed. *See supra* n.3.

Freeman has introduced evidence to allow a reasonable jury to find that Amtrak terminated her not because of a policy violation, but because she needed medical leave for her disability. Viewed in favor of Freeman, the evidence shows that Conway pressed for an update from OIG on their investigation of Freeman, stating that she "has been out on medical" but that he believed "she is being fraudulent" and "probably just needs benefits from Amtrak." ECF No. 25-17 at 3. Amtrak insists that the decision to terminate Freeman was simply based on the OIG investigation and the hearing officer's finding that she had violated company policy. ECF No. 24-1 at 12. But Freeman points to evidence suggesting that Conway planned to terminate her immediately after receiving the OIG report—before the hearing had even been conducted. ECF No. 25-23 at 2 (Conway stating that "[w]e released" another employee for outside employment while on leave and "will be consistent with this employee as well"). So a jury could decline to credit Amtrak's argument that the termination was triggered only by the OIG investigation and the hearing officer's decision.

Freeman also points to statements between Conway and Kates that could support a pretext finding. Months before OIG even issued its report, Conway said he believed Freeman was being "fraudulent" and likely needed Amtrak employment just for the benefits. ECF No. 25-17 at 3. Kates, for his part, submitted an accusation to OIG based on his suspicion that Freeman was engaged in outside employment—even though Amtrak policy provides that a manager who learns that an employee is engaging in outside employment must contact Leave Management. ECF No. 28 ¶ 58; ECF No. 25-12 at 5; *see Johnson v. District of Columbia*, 99 F. Supp. 3d 100, 106 (D.D.C. 2015) ("An employer's failure to follow its own procedures in terminating an employee may be probative evidence of pretext."). When Kates learned that the OIG investigation was ongoing, he wrote to Conway: "Ongoing – that sounds good!" ECF No. 25-17 at 2. Amtrak says Conway and Kates were simply focused on Freeman's "potential fraud" rather than on her disability. ECF No.

10

29 at 19. That may be true, but the evidence could also support a finding of pretext and that's a question for the jury to decide. *See Moore v. Hayden*, No. 18-cv-2590, 2021 WL 11629829, at *19 (D.D.C. Feb. 22, 2021) (evidence of decisionmaker's lack of neutrality supported inference of pretext).[5]

In addition to this evidence of pretext, a reasonable jury could conclude the company policies Amtrak relied on for Freeman's termination are capable of arbitrary application and were stretched to include her. Although the policies generally state that "outside employment," including "self-employment," is prohibited, neither term is defined and this would not obviously encompass providing makeup services at cost. *See, e.g.*, ECF No. 24-3 at 82. To be sure, as Amtrak points out, it is not enough for Freeman to simply show that Amtrak misapplied its policies. ECF No. 24-1 at 13–14. The D.C. Circuit has explained that "an employer's action may be justified by a reasonable belief in the validity of the reason given even though that reason may turn out to be false." *George v. Leavitt*, 407 F.3d 405, 415 (D.C. Cir. 2005). But it is also well established that the falsity of an asserted reason "may undermine an employer's professed honest belief in that reason." *Id.* Here, Freeman has introduced evidence that the asserted reason was pretextual, as well as reason to doubt Amtrak's explanation that she had clearly violated its policies, and that is sufficient to survive summary judgment. *See Morris*, 825 F.3d at 671 (explaining in Title VII context that plaintiff can survive summary judgment by "casting doubt on the objective validity of the employer's explanation"); *George*, 407 F.3d at 413 ("Usually, proffering 'evidence from which a jury could find that [the employer's] stated reasons . . . were pretextual . . . will be enough to get

---

[5]   Amtrak says Freeman's arguments sound in retaliation rather than discrimination. ECF No. 29 at 12. The point is well taken insofar as it recognizes that Freeman did not allege a retaliation claim. But Freeman relies on this evidence to show discrimination, not for any separate claim of retaliation. The evidence is properly considered as relevant to Freeman's discrimination claim.

a plaintiff's claim to a jury.'" (alteration and omissions in original) (quoting *Carpenter v. Fed. Nat'l Mortg. Ass'n*, 165 F.3d 69, 72 (D.C. Cir. 1999))); *see also Congress v. District of Columbia*, 514 F. Supp. 3d 1, 12 (D.D.C. 2020) (explaining that "the central inquiry is whether the defendant 'honestly and reasonably believed' the purported grounds for the adverse action" and that a plaintiff may "undermine the employer's stated reason through a variety of evidentiary sources" (quoting *Brady v. Off. of Sergeant at Arms*, 520 F.3d 490, 496 (D.C. Cir. 2008))).[6]

### III.   Conclusion

For these reasons, Amtrak's motion for summary judgment, ECF No. 24, is denied. Amtrak's motion to strike, ECF No. 31, is denied as moot.

 

_____
AMIR H. ALI
United States District Judge

Date:   September 22, 2025

---

[6]   After Amtrak filed its reply brief, Freeman filed a reply in support of additional material facts. ECF No. 30. Amtrak has moved to strike that filing as an improper sur-reply. ECF No. 31. The Court does not rely on Freeman's reply in reaching its conclusions, so the motion to strike is denied as moot.